IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIEL JOSEPH HAWVER**, | Case No. 3:15-cv-00896-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN** Acting Commissioner of Social Security, | |
| Defendant. | |

George J. Wall, LAW OFFICES OF GEORGE J. WALL, 1336 E Burnside, Suite 130, Portland, OR 97214. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Heather L. Griffith, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA, 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Daniel Joseph Hawver ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff filed an application for SSI on July 29, 2009 alleging disability beginning on December 15, 2006, later amended to July 3, 2003. AR 128, 21. At the time of the initial filing, Plaintiff was 38 years old. AR 128. Plaintiff alleged disability due to schizophrenia, memory

PAGE 2 – OPINION AND ORDER

problems, and anxiety. AR 160. The Commissioner denied the claim initially and upon reconsideration; thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 21. An administrative hearing was held on June 20, 2011. AR 21, 39-73. ALJ Eleanor Laws ruled that Plaintiff was not disabled at any time since he filed his application. AR 33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff sought judicial review of that decision. On March 27, 2014, the Court remanded the case for further proceedings, finding two errors in the Commissioner's decision. AR 823-36. The Court instructed the ALJ to reconsider the medical opinions of three of Plaintiff's treating mental health providers and also to reconsider the side effects of Plaintiff's medications. AR 836. ALJ Jo Hoenninger collected more evidence and a second administrative hearing was held on January 22, 2015. AR 755-91. The ALJ ruled that Plaintiff has not been under disability since the date of his application. AR 734. Plaintiff seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

ALJ Hoenninger applied the sequential process. AR 735-48. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the application date of July 29, 2009. AR 735. At step two, the ALJ found that the Plaintiff has the following severe impairments: "personality disorder, NOS; substance-induced psychosis; and mild degenerative disc disease with central canal narrowing and disk herniations status post laminectomy." *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment. AR 736. The ALJ found that Plaintiff has the RFC to perform light work, with some limitations. AR 738. Specifically, the ALJ found:

> [T]he claimant can do no more than occasionally stoop, kneel, crouch, crawl and climb ramps and stairs. He should not climb ladders, ropes, or scaffolds. He should avoid concentrated

PAGE 5 – OPINION AND ORDER

> exposure to hazards such as unprotected heights and exposed moving mechanical parts. He can understand and remember simple instructions; . . . he can make simple work-related decision [sic]; he has sufficient concentration, persistence or pace to complete simple, routine tasks for a normal workday and workweek with normal breaks except be may be off task 5% of the time or less; and he should have no more than brief, incidental contact with the general public.

*Id.*

In reaching this decision, the ALJ gave great weight to the RFC determination of doctors Bill Hennings, Ph.D., and Joshua Boyd, Psy.D., except the ALJ concluded that the record does not support Drs. Hennings' and Boyd's finding that Plaintiff is precluded from working in hazardous conditions because his alcohol and amphetamine dependence now appear to be in remission. AR 743. The ALJ also gave great weight to the opinion of examining physician Dr. Ronald D. Duvall, Ph.D., because Dr. Duvall conducted a large amount of psychological testing of Plaintiff and reviewed Plaintiff's medical records before rendering his opinion. AR 745.

The ALJ gave only some weight to the opinion of examining physician Dr. Nancy Cloak, M.D., giving more weight to Dr. Duvall's opinion because of the testing performed by Dr. Duvall and the fact that Dr. Duvall spent more time with Plaintiff than did Dr. Cloak. AR 744. The ALJ gave only little weight to the opinion of Dr. Karla Rae Causeya, Psy.D., because Dr. Causeya appeared to significantly rely on Plaintiff's subjective testimony, some of Dr. Causeya's opinions were speculative, and Dr. Causeya performed only limited testing. *Id.* The ALJ gave little weight to the testimony of Plaintiff, Plaintiff's girlfriend, and Plaintiff's aunt. AR 745-46.

Based on the Court's previous decision, the ALJ reconsidered the findings of treating sources Damon Williams, Psychiatric Mental Health Nurse Practitioner ("PMHNP"); Janet Stein, Family Nurse Practitioner ("FNP"); and Jaime Lee, Licensed Clinical Social Worker ("LCSW").

PAGE 6 – OPINION AND ORDER

The ALJ gave these opinions little weight because they were inconsistent with the providers' own contemporaneous treatment records from their facility, the Multnomah County Health Department ("MCHD"). AR 745. The ALJ also found the opinions were inconsistent with later records from Lifeworks Northwest, Kaiser Permanente, and the MCHD. *Id.* The ALJ noted that these providers relied at least in part on Plaintiff's subjective testimony and conducted no comprehensive memory, intelligence, or personality tests. *Id.* The ALJ also reconsidered the side effects of Plaintiff's medications. AR 742. The ALJ found that Plaintiff's continued use of alcohol and marijuana make it unclear whether Plaintiff's grogginess and fatigue are medication side effects or the results of Plaintiff's continued drug and alcohol use. *Id.*

At step four, the ALJ found that Plaintiff has no past relevant work.[1] AR 747. At step five, the ALJ determined that in consideration of Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy. *Id.* A vocational expert testified that Plaintiff can perform occupations including janitorial housekeeping and assembly. *Id.* The ALJ concluded that Plaintiff has not been under disability, as defined in the Social Security Act, after the application date of July 29, 2009. AR 748.

## DISCUSSION

Plaintiff argues that ALJ Hoenninger failed to correct the errors the Court found in the previous ALJ's decision. Specifically, Plaintiff argues that, similar to the previous ALJ, ALJ Hoenninger erred by: (A) improperly rejecting the opinions of three of Plaintiff's treating mental health providers, and (B) failing to properly consider the side effects of Plaintiff's medication.

---

[1] The ALJ determined that Plaintiff's previous experience in welding did not qualify as past relevant work because Plaintiff had not worked for the requisite 12 months as a welder. AR 777-86.

PAGE 7 – OPINION AND ORDER

A.  **Opinions of the Three Treating Mental Health Professionals**

Plaintiff argues that ALJ Hoenninger improperly rejected the opinions of the three mental health professionals—Damon Williams, PNHNP, Janet Stein, FNP, and Jamie M. Lee, LCSW—who signed a letter on June 14, 2011, expressing support for the May 18, 2011 findings and assessment of Dr. Causeya. Dr. Causeya had concluded that Plaintiff is unable to work based on his persisting hallucinations, suspicious thinking, and chronic fatigue. AR 703. The Commissioner counters that ALJ Hoenninger added significant evidence to the record and adequately explained the weight given to these opinions.

Social Security Rule ("SSR") 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 416.913(d). Because Mr. Williams and Ms. Stein are nurse practitioners, they are considered "other" medical sources. In addition, the ALJ can consider the opinions of "[p]ublic and private social welfare agency personnel" as "other" sources to determine an individual's ability to work. *Id.* As a social worker, Ms. Lee qualifies as such an "other" source.

An ALJ may not reject the competent testimony of "other" sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every

PAGE 8 – OPINION AND ORDER

witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

At the hearing on January 22, 2015, the ALJ reconsidered the testimony from the three mental health professionals. AR 744-45. In their letter, the three mental health professionals opined that Plaintiff experiences fatigue, a common side effect of his medication, and therefore requires additional rest breaks. AR 708. They also noted that Plaintiff's "positive psychiatric symptoms are somewhat controlled by his Risperdal medications." *Id.*

PAGE 9 – OPINION AND ORDER

The ALJ gave the opinions of Mr. Williams, Ms. Stein, and Ms. Lee little weight because: (1) the opinions were inconsistent with the MCHD records from the same time period and later records from MCHD, Lifeworks Northwest, and Kaiser Permanente; (2) the opinions were contradicted by the findings of Dr. Duvall; and (3) the opinions were based in part on Plaintiff's subjective testimony. Each reason is addressed below.

### 1. Inconsistency with medical records

The ALJ pointed to MCHD records showing that Plaintiff is "stable," AR 612, that his hallucinations are "fairly well controlled," AR 617, and that his "mood appears improved," AR 686, as being inconsistent with the conclusions in the June 14, 2011 letter. The ALJ, however, overlooked other medical record evidence from the same time period that support the statements in the letter. For example, on June 15, 2010, Plaintiff reported that he was "doing OK" on Risperdal, but was continuing to have auditory and visual hallucinations. AR 692. On September 14, 2010, Plaintiff reported that Risperdal "slowed down" his hallucinations. AR 689. At that same visit, Mr. Williams noted Plaintiff's "[s]ignificant anhedonia, feeling down, hopeless." *Id.* Ms. Lee echoed this determination, describing Plaintiff's mood as "coping adequately but depressed and grieving." AR 688. On October 26, 2010, Mr. Williams noted that Plaintiff had "intermittent auditory hallucinations" and noted improvement due to reduced stress at home. AR 686.  In addition, records from the MCHD showed that Plaintiff continues to experience fatigue and grogginess in the morning. AR 607, 686-87, 689.

An ALJ may not "cherry pick" from mixed results. *See Oshodi v. Holder*, 729 F.3d 883, 893 (9th Cir. 2013). Further, the ALJ focused on Plaintiff's "improvement" as contradicting the three mental health providers, but the Ninth Circuit recently reiterated its caution regarding relying on improvement in mental health symptoms as a basis for making adverse credibility determinations:

PAGE 10 – OPINION AND ORDER

> As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Thus, the purported conflict between the treating mental health professionals' determination and the contemporaneous MCHD records is not a germane reason to discredit them.

Similarly, the opinions of Mr. Williams, Ms. Stein, and Ms. Lee are not inconsistent with later records from the MCHD, Lifeworks Northwest, and Kaiser Permanente. The evidence from Kaiser Permanente mostly relates to Plaintiff's spinal stenosis and surgery in 2014, but includes a single note that Plaintiff is mentally stable. AR 1049. Lifeworks Northwest closed Plaintiff's mental health case after a lengthy period of stability, AR 1069, and the MCHD records from 2011 through 2013 demonstrate that Plaintiff took his Risperdal daily, remained stable, but continued to experience hallucinations. AR 955-56, 959, 962, 966, 968, 970, 973, 985. Plaintiff's stability is consistent with the letter from the three mental health professionals, who opined that Plaintiff's symptoms are somewhat controlled by his Risperdal prescription.

### 2. Inconsistency with Dr. Duvall's opinion

The ALJ also relied on the opinion and test results of Dr. Duvall, Ph.D., in discrediting the opinions of the three treating mental health professionals. The ALJ observed that Mr. Williams, Ms. Stein, and Ms. Lee engaged in no "comprehensive memory, intelligence, or personality tests" of Plaintiff. AR 745. Dr. Duvall is a licensed psychologist who evaluated Plaintiff on August 31, 2011. AR 714. An extended interview and multiple neuropsychological tests were administered. *Id.* In his report, Dr. Duvall noted concerns regarding Plaintiff's

truthfulness during the testing based on his answers to the MMPI-2 exam. AR 720. Dr. Duvall concluded that Plaintiff exhibited no positive or negative signs of schizophrenia during the interview and that there was no "cognitive deficit or psychiatric diagnosis" that would cause Plaintiff to deteriorate if he began working. AR 721-22. Dr. Duvall's assessment contradicts the conclusions in the June 2011 letter and provides a germane reason for the ALJ to discredit the opinions of the three treating mental health professionals. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing inconsistency with medical evidence as a germane reason).

Plaintiff contends in his reply brief that the ALJ erred by adopting Dr. Duvall's opinion rather than the opinions of Mr. Williams, Ms. Stein, and Ms. Lee. Plaintiff discusses the extensive evidence in the record that Plaintiff has been consistently diagnosed with a psychotic or schizoaffective disorder by treating and examining sources. The ALJ, however, need only give germane reasons for giving little weight to the opinions of these three mental health providers. *See Molina*, 674 F.3d at 1111. The ALJ considered Dr. Duvall a more reliable source based on the extensive testing he conducted, and the ALJ therefore relied on Dr. Duvall's assessment to a greater extent. This determination lies within the ALJ's discretion and qualifies as a germane reason.

### 3. Based on Plaintiff's subjective testimony

The ALJ also discredited the opinions of the three mental health professionals because they were based in part on the subjective complaints of the Plaintiff. AR 745. ALJ Hoenninger found that Plaintiff was not generally credible, a finding Plaintiff has not challenged. AR 746. This determination was based in part on Dr. Duvall's concerns about Plaintiff's honesty during the testing portion of his assessment. AR 720, 745. The fact that these practitioners relied on Plaintiff's subjective statements when Plaintiff's has been found not to be credible is another germane reason for giving little weight to these opinions. *Molina*, 674 F.3d at 1114-15. For these

PAGE 12 – OPINION AND ORDER

reasons, the ALJ did not err in her consideration of the opinions of the three treating mental health professionals.

## B.  Side Effects of Plaintiff's Medication

Plaintiff argues that the ALJ failed properly to reconsider the side effects of Plaintiff's medication. The Commissioner contends that Plaintiff simply disagrees with the ALJ's assessment.

Plaintiff takes one or two milligrams of Rispderdal each night to treat his schizophrenia symptoms. *See* AR 973, 986. Plaintiff feels groggy and fatigued in the mornings, which he manages by drinking coffee. AR 177-78, 700. The ALJ specifically reconsidered the side effects Plaintiff experiences from Risperdal, concluding that Plaintiff's continued use of alcohol and marijuana makes it difficult to determine whether the symptoms are side effects of the medication or the continued drug and alcohol use. AR 742. The ALJ noted that she gave some weight to the reports that Plaintiff had a "blunted affect, low energy and depression," but that does not necessarily render him unemployable as long as those symptoms are taken into account. AR 745. The ALJ also relied on Dr. Duvall's determination that Plaintiff has credibility problems to make her assessment. AR 743.

The ALJ must provide "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews*, 53 F.3d at 1039). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1193, 1196. The Commissioner's interpretation in this instance is a rational reading of the record. Plaintiff's grogginess and fatigue in the morning may be caused by either by the Risperdal or his continued use of marijuana and alcohol. In either case, Plaintiff manages this grogginess with coffee. Plaintiff does not complain of grogginess or

PAGE 13 – OPINION AND ORDER

fatigue in the afternoons. AR 742-43, 771. The ALJ reasonably concluded that Plaintiff would be able to work a regular workday with regular breaks. The ALJ erred in her assessment by stating that Plaintiff only experiences the side effects when he takes more than two milligrams of Risperdal, but the error was ultimately harmless because the ALJ was aware of and took into account Plaintiff's daily symptoms. AR 742, 770-71; *see Stout*, 454 F.3d at 1055 (holding that the ALJ's error was harmless because it was inconsequential to the ultimate non-disability determination). For these reasons, the ALJ properly considered the side effects of Plaintiff's medications.

## CONCLUSION

The Commissioner's decision is based on substantial evidence in the record, and the ALJ's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 10th day of June, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge